IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NICOLE ASKEW,

                Plaintiff,

     v.                            1:11-cv-1245-WSD

DC MEDICAL, LLC,
DEPUY ORTHOPAEDICS, INC.,
and DEPUY, INC.,

                Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants DePuy Orthopaedics, Inc.,

DePuy, Inc., and DC Medical, LLC's (collectively, "Defendants") Motion to Stay

Proceedings Pending Transfer to MDL No. 2197 [5] and Plaintiff Nicole Askew's

("Plaintiff") Emergency Motion to Remand [6].[1]

## I.    BACKGROUND

This is a products liability action arising from a DePuy ASR Hip Implant

Device ("ASR device") implanted into Plaintiff on September 9, 2009.  (Compl.

¶ 60).  On March 15, 2011, Plaintiff filed her Complaint against Defendants in the

_____

[1] Plaintiff also moved for an emergency hearing and expedited ruling [8] on her
Motion to Remand.  The Court granted the request for expedited briefing but, as
the briefing is sufficient to reach a decision on the Motion to Remand, the Court
denies the request for a hearing.

State Court of DeKalb County, Georgia.  Plaintiff asserts claims against DePuy Orthopaedics, Inc. and DePuy, Inc. (collectively, "DePuy"), the designers and manufacturers of the ASR device, for strict products liability, negligence, negligent misrepresentation, fraud and suppression, and civil conspiracy.  (Compl. ¶¶ 67-93, 116-132).  Plaintiff asserts claims against DC Medical, LLC ("DC Medical"), the sole distributor of the ASR device in Georgia, for negligence, breach of warranty, negligent misrepresentation, fraud and suppression, and civil conspiracy.  (Id. ¶¶ 94-132).  Plaintiff alleges that, "at least as of the implantation of the ASR Hip Implant Device into her left hip on September 9, 2009, DC Medical, and its employees and agents, knew of the dangers imposed by the devices, failed to warn Ms. Askew of those dangers, and instead stood idly by while a dangerous and defective product was implanted into Ms. Askew."  (Pl.'s Br. Supp. Mot. to Remand ("Remand Brief") at 7).

On April 15, 2011, DePuy removed the action to this Court based on diversity of citizenship, arguing that Plaintiff fraudulently joined DC Medical, the only Georgia-resident defendant in this case, and thus that DC Medical's citizenship must be disregarded for jurisdictional purposes.[2]  Defendants submit

---

[2] The citizenship of the parties is not in question.  The parties agree that Plaintiff is a resident of Georgia, that the DePuy defendants are both non-resident corporations, and that DC Medical is a resident of Georgia. DePuy also alleges,

the Declaration of Dennis Castenfelt (Notice of Removal Ex. C ("Castenfelt Decl.")), the principal and sole member of DC Medical, to show that DC Medical did not know of any alleged defect in the ASR device before it was distributed for use in Plaintiff's surgery, to support that DC Medical was not involved in the design, manufacture, testing, or regulatory approval of the ASR device, and to show that DC Medical was not involved in the promotional, marketing, description, or application materials for the ASR device.

On April 19, 2011, DePuy moved to stay the action pending transfer to the In re DePuy Orthopaedics, Inc. ASR Hip Implant Products Multi-District Litigation (the "MDL"), now pending in the United States District Court for the Northern District of Ohio, MDL Docket No. 1:10-md-2197.

On April 25, 2011, the case was conditionally transferred to the MDL. (Defs.' Resp. Mot. to Remand ("Remand Response") Ex. 2 (Conditional Transfer Order)).  Plaintiff has filed her opposition to transfer.  Until the opposition is decided, this Court continues to have jurisdiction over the litigation, including to consider any pending motions filed in this case, including Plaintiff's Motion to Remand.

---

and Plaintiff does not dispute, that the amount in controversy in this action exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

On April 26, 2011, Plaintiff filed her emergency motion to remand, arguing that the joinder of DC Medical as a defendant was proper and that the Court lacks subject matter jurisdiction over the litigation.  Plaintiff asserts that Defendants knew of the dangers imposed by the devices (Remand Brief at 7), and later argues that DC Medical "was or should have been in possession of evidence demonstrating that the [ASR device] caused serious injuries and would fail," (id. at 16 (quoting Compl. ¶ 97)).  Plaintiff also claims that DC Medical knew of the alleged defects because "[r]elated news articles in the mainstream media had reported that there were 'more than two years of reports that the [ASR device] was failing . . . .'"  (Id. at 22-23).  The news report does not state the source of its reporting of ASR device failures, whether information about them was available to the industry or the public, or that DC Medical or other distributors had access to it.[3] (Remand Br. Ex. 1 (Barry Meier, With Warning, a Hip Device is Withdrawn, N.Y. Times, Mar. 10, 2010, at B1 (website version printed Mar. 7, 2011))).  Plaintiff opposes Defendants' Motion to Stay and urges the Court to rule on her remand motion.

---

[3] The comments in the article about reports of ASR device failures appear to be based on information provided by a doctor in Australia. The article notes that the ASR device is not often used in the United States.

**II.   DISCUSSION**

    A.    <u>Motion to Stay</u>

Defendants move to stay this action pending transfer to the MDL on the grounds that a stay will advance the purposes of the MDL and will not prejudice Plaintiff.  Plaintiff responds that because the motion to remand will have to be decided by this Court, or the MDL transferee court, judicial economy weighs against granting a stay.  The parties agree that it is within the Court's discretion whether a stay should be granted.

It is axiomatic that "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings."  <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir. 1999).  "[N]o party has a right to remain in federal court when subject matter jurisdiction is plainly lacking and a defendant . . . is thus not prejudiced in any meaningful sense by an early rather than late remand to state court."  <u>Betts v. Eli Lilly & Co.</u>, 435 F. Supp. 2d 1180, 1184 (S.D. Ala. 2006).

The principal issue here is whether there is federal subject matter jurisdiction over this action.  Whether diversity jurisdiction exists depends on the interpretation of Georgia law, specifically whether Plaintiff has cognizable claims against DC Medical.  Consideration of this issue by a court in Georgia is reasonable and the

Court concludes that judicial economy is not served by deferring this Georgia-law intensive jurisdictional issue to the MDL Court.  The request for a stay is denied.

        B.        <u>Motion to Remand and Fraudulent Joinder</u>

Federal law authorizes the removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  The Court's original jurisdiction in this case is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), which authorizes federal jurisdiction over suits between citizens of different states where the amount in controversy exceeds $75,000.  The "total" or "complete" diversity rule, however, limits the Court's diversity jurisdiction "to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996).

There is not complete diversity between the named parties in this case because, as the parties agree, the Plaintiff and Defendant DC Medical are both citizens of Georgia.  Defendants argue, however, that Plaintiff fraudulently joined DC Medical to this lawsuit solely to defeat diversity jurisdiction, and that there is no possibility that Plaintiff can establish a state law cause of action against DC Medical.  If DC Medical is not a proper party, Defendants argue, the Court may ignore DC Medical's citizenship for the purposes of diversity jurisdiction.  The

6

parties do not dispute that Plaintiff and DePuy are completely diverse to each other, and they do not dispute that the suit satisfies the $75,000 amount-in-controversy requirement. The propriety of removal therefore depends solely on whether Plaintiff fraudulently joined DC Medical.

      1.    <u>Legal Standard Governing Allegations of Fraudulent Joinder</u>

The law in our circuit regarding whether a party has been fraudulently joined is well-developed. When fraudulent joinder of a defendant is claimed, "the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997); <u>see also</u> <u>Williams v. Best Buy Co.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001). "If there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the Complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." <u>Florence v. Crescent Res., LLC</u>, 484 F.3d 1293, 1299 (11th Cir. 2007).

"To determine whether the case should be remanded [because diversity jurisdiction is not present], the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about

state substantive law in favor of the plaintiff." <u>Crowe</u>, 113 F.3d at 1358.  In doing

so, a court may consider affidavits in deciding whether a plaintiff has stated an

arguable claim.  <u>Legg v. Wyeth,</u> 428 F.3d 1317, 1322 (11th Cir. 2005).  "The

determination whether a resident defendant has been fraudulently joined must be

based upon the plaintiff's pleadings at the time of removal, supplemented by any

affidavits and deposition transcripts submitted by the parties." <u>Pacheco de Perez v.</u>

<u>AT&T Co.</u>, 139 F.3d 1368, 1380 (11th Cir. 1998).

     While a court is required to resolve questions of fact in a plaintiff's favor,

"the court need not accept all of the plaintiff's claims as true in the face of

unanswered affidavits squarely contradicting the plaintiff's factual assertions." <u>In</u>

<u>re ConAgra Peanut Butter Prods. Liab. Litig.</u>, No. 1:07-cv-2096, MDL No. 1:07-

md-1845, 2008 WL 953023, at *2 (N.D. Ga. Apr. 8, 2008) (citing <u>Legg</u>, 428 F.3d

at 1322-23).  That is, a court "does not assume that the plaintiff could or would

prove the necessary facts in the absence of any proof." <u>Id.</u>

     2.   <u>Plaintiff's Negligence Claims against DC Medical</u>

     Plaintiff alleges "that at least as of the implantation of the ASR Hip Implant

Device into her left hip on September 9, 2009, DC Medical, and its employees and

agents, knew of the dangers imposed by the devices, [and] failed to warn Ms.

Askew of those dangers."  (Remand Br. at 7).  This failure, Plaintiff alleges,

"give[s] rise to independent causes of action against DC Medical, separate and apart from any causes of action against DePuy." (Id.). Plaintiff "focuses on her claims for negligence and negligent misrepresentation which make up the gravamen of her claims against DC Medical. (Id. at 13-14).[4] Specifically, Plaintiff's claims center on the negligent failure to warn on the part of DC Medical. Id. at 16. She further refines these claims by stating that "DC Medical 'was or should have been in possession of evidence demonstrating that the DePuy ASR Hip Replacement Devices caused serious injuries and would fail.'" (Id. (quoting Compl. ¶ 97)). The question is whether Plaintiff alleges a cognizable claim for negligence and negligent misrepresentation based on DC Medical's failure to warn of a known danger in the ASR device.

The law in Georgia regarding the duty of a distributor of a product manufactured by another to warn of product defects and dangers is well-established. A manufacturer, of course, has a significant obligation to warn of known dangers in a product and otherwise is liable for product defects even if

---

[4] Plaintiff, in a footnote, states that in focusing on these two common law claims in her complaint she does not "mean[] to suggest that Plaintiff does not believe she has stated legitimate claims for the other claims pled, but there is no need to address those claims as claims for negligence and negligent misrepresentation have been clearly stated." (Id. at 14 n.5). Plaintiff has valid claims, if at all, against DC Medical based on negligence. Nonetheless, the Court later in this Order addresses Plaintiff's other claims against this distributor.

latent.  See Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. Ct. App. 1994)

("duty to warn arises whenever the manufacturer knows or reasonably should

know of the danger arising from the use of its product"); Ga. Code Ann. § 51-1-

11(b) (manufacturers strictly liable for product defects).  A distributor's liability

for failure to warn is substantially more limited.  "[A] distributor . . . [can] be held

liable for negligent failure to warn only if, at the time of the sale, it had 'actual or

constructive knowledge' that its product created a danger for the consumer."

Bishop v. Farhat, 489 S.E.2d 323, 328 (Ga. Ct. App. 1997).  A "seller [of a

product] is required to give warning 'if he has knowledge, or by the application of

reasonable, developed human skill and foresight should have knowledge' of the

danger."  Batten, 450 S.E.2d at 211 (quoting Restatement (Second) of Torts

§ 402A cmt. j (1965)); see also Bean v. Omark Indus., Inc., 237 S.E.2d 607, 610

(Ga. Ct. App. 1997) (seller of product who has actual or constructive knowledge of

a danger has a duty to warn of the danger at the time of sale).

     *a)*      *Allegations in the Complaint against DC Medical*

     Plaintiff claims that DC Medical knew or should have known—that is, had

actual or constructive knowledge—of the "problems" with the DePuy product.

(Pl.'s Reply Mot. to Remand ("Remand Reply") at 7).  To support this claim

Plaintiff alleges the following in her Complaint and cites these allegations to support her argument that Plaintiff's claims are a viable:

- DC Medical was DePuy's exclusive distributor in Georgia and distributed the ASR Hip Plant Device at issue in this action that was delivered to the hospital by DC Medical for Plaintiff's operation. (Compl. ¶ 14-18).

- DC Medical "was or should have been in possession of evidence demonstrating that the DePuy ASR Hip Implant Devices caused serious injuries and would fail."  (Compl. ¶ 97).

- Employees or agents of DC Medical including Scott Butts attended Plaintiff's surgery on September 9, 2009, and offered advice and assistance to Plaintiff's physician, Dr. Anderson, during the surgery. (Compl. ¶ 98).

- "Prior to, on, and after September 9, 2010, DC Medical's employees or agents were or should have been aware of the defective condition of the ASR Hip Implant Devices, the increased risk to patients, and/or the false representations regarding the performance and/or risks to patients."  (Compl. ¶ 99).

- "Neither Mr. Kimberl, Mr. Butts, nor any other DC Medical employees or agents disclosed any of the above known problems, defects, and material facts to Plaintiff Nicole Askew or her physician, Dr. Anderson."  (Compl. ¶ 99).

(Remand Br. at 4-7; Remand Reply at 6).

In short, Plaintiff relies largely on general, conclusory allegations[5] that DC Medical "was or should have been in possession of evidence demonstrating that the [ASR device] caused serious injuries" and that DC Medical's employees or agents "were or should have been aware of the defective condition of the [ASR device implanted in Plaintiff on September 9, 2009]." (Compl. ¶¶ 97, 99). Plaintiff does not allege what information there was available to DC Medical about alleged defects in, or problems with, the ASR device.

b)    *Castenfelt Declaration*

Defendants submitted the Declaration of Dennis Castenfelt to support their argument that DC Medical did not know, or have notice, that the ASR device at issue in this case was defective or subject to failure. Castenfelt is the principal and sole member of DC Medical, a Georgia limited liability company that distributes devices for DePuy in Georgia. (Castenfelt Decl. ¶ 2). DC Medical contracts with other independent contractors through which DePuy's devices are distributed for

---

[5] The Supreme Court has observed that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. Although the Court applies the standards governing allegations of fraudulent joinder to this case rather than the Twombly/Iqbal pleading standards, those cases usefully illustrate the inadequacy of Plaintiff's conclusory allegations to rebut uncontroverted affidavit testimony denying DC Medical's knowledge of the ASR Device's alleged defects.

patient implant. (<u>Id.</u> ¶ 4). Castenfelt also states that DC Medical always distributed DePuy's devices as packaged by DePuy and did not have an ownership interest in, or receive payment for, any devices purchased by a user from DePuy. (<u>Id.</u> Decl. ¶¶ 7-8). DC Medical, according to Castenfelt, did not design, manufacture, develop, or test the ASR device at issue in this case, and "[a]ll marketing and promotional materials" were provided to DC Medical by DePuy. (<u>Id.</u> Decl. ¶ 10-12). Castenfelt states that neither he personally nor DC Medical "had knowledge of any manufacturing, design, or other defect in the DePuy hip prosthesis allegedly used by Plaintiff's surgeon at any time material to Plaintiff's Complaint." (<u>Id.</u> ¶ 9).

   *c)* *Analysis*

   The Court considers the allegations of the Complaint, upon which Plaintiff relies for its claims against DC Medical, as well as the Castenfelt declaration, to evaluate, for the purpose of § 1441(a) removal premised upon diversity jurisdiction, whether a proper claim has been asserted against DC Medical in this action. <u>See</u> <u>Legg v. Wyeth</u>, 428 F.3d at 1322. In conducting its evaluation, the Court notes that it is obligated to "resolve all questions of fact . . . in favor of the plaintiff," <u>Crowe</u>, 113 F.3d at 1542, but "need not accept all of the plaintiff's claims as true in the face of unanswered affidavits squarely contradicting the

plaintiff's factual assertions." In re ConAgra, 2008 WL 953023, at *2.  The Court

also "does not assume that the plaintiff could or would prove the necessary facts in

the absence of any proof." Id. (citing Legg, 428 F.3d at 1323).

Castenfelt has testified unequivocally in his declaration that DC Medical did

not have knowledge of any defect prior to distribution of the device at issue.  In

providing context for that statement, Castenfelt testified that DC Medical's

distribution role is limited.  DC Medical does not open the ASR device packaging,

which DC Medical receives already labeled and sealed by DePuy, and DC Medical

does not inspect or examine the implants contained within the DePuy packaging.

(Castenfelt Decl. ¶ 7).  DC Medical did not design, manufacture, develop, or test

the ASR device, and DC Medical did not draft, compile or generate the packaging,

labeling, or language used in the package inserts.  (Id. ¶¶ 10-11).  Castenfelt

testified that "[n]either [he], personally, nor DC Medical had knowledge of any

manufacturing, design, or other defect in the DePuy hip prosthesis allegedly used

by Plaintiff's surgeon at any time material to Plaintiff's Complaint."  (Id. ¶ 9).  All

marketing and promotional materials used by DC Medical were provided by

DePuy.  (Id. ¶ 12).

Plaintiff seeks to discredit the declaration evidence by stating that DC

Medical knew or should have known of the alleged defects based on its role as the

14

"exclusive authorized agent and/or representative for DePuy" and because DC

Medical's agents or employees attended Plaintiff's surgery and offered advice and

assistance to Plaintiff's physician.  (Remand Br. at 16).  These contentions do not

in whole or in part answer the unequivocal declaration testimony offered by

Castenfelt that DC Medical did not know of any defects in the ASR device on

September 9, 2010.

    Plaintiff has not produced evidence that DC Medical had actual or

constructive knowledge of alleged defects in the ASR device prior to its

distribution for use in Plaintiff's surgery.  While the burden on Defendants to show

fraudulent joinder is a heavy one, Plaintiff must point to some evidence that

supports her claim against DC Medical now that the allegations in their Complaint

have been controverted by the Castenfelt Declaration.  See In re ConAgra, 2008

WL 953023, at *2 (plaintiff's assertion in her motion to remand that the distributor

"could have and in all likelihood did sell a product after it had actual knowledge

that the product was tainted" was insufficient to provide evidence of actual

knowledge); see also Legg, 428 F.3d at 1322 (holding that district court abused its

discretion where it refused to consider defendants' affidavits, relied solely on the

allegations in plaintiffs' complaint, and reasoned that the information in the

affidavits contradicting plaintiffs' claims went to the merits of the case); Fowler v.

Wyeth, No. 3:04-cv-83, 2004 WL 3704897, at *4 (N.D. Fla. May 14, 2004) ("Once

Wyeth presented the declarations to the Court, Plaintiffs could not continue to rely

upon their unsupported allegations in the Complaint.  Plaintiffs had to put forth

specific evidence to refute the statements in the declarations."); Davis v. Wyeth,

Inc., No. 4:03-cv-128, 2004 WL 3569806 (M.D. Ga. 2004) (where plaintiff fails to

respond to affidavit testimony of distributors sales representatives that they had no

personal knowledge that prescription drug was harmful or that manufacturer's

marketing and promotional materials about the drug were not truthful or complete,

no cause of action against distributors under Georgia law and their residence

ignored in determining subject matter jurisdiction).

At most, Plaintiff has suggested that DePuy, rather than DC Medical, may

have had knowledge of an alleged defect prior to Plaintiff's September 9, 2009,

surgery.  Plaintiff, however, fails to present any evidence which logically or

reasonably imputes DePuy's knowledge to DC Medical.  "[A]lleging that a seller

should have possessed actual knowledge is short of providing any evidence of

actual knowledge."  In re ConAgra, 2008 WL 953023, at *2 (in light of plaintiffs'

failure to contradict defendants' affidavits, "[a]t best, the [p]laintiff offers

speculation that [the seller] might have learned about the contaminated peanut

butter from government investigations").  Because Plaintiff fails to dispute

16

Defendants' assertions in the Castenfelt Declaration with any evidence supporting

their allegations that DC Medical had knowledge of a defect prior to distributing

the ASR device implanted into Plaintiff, the Court concludes that Plaintiff has not

stated against DC Medical a viable claim of negligence under Georgia law.  See

Hester v. Human, 211 Ga. App. 351, 353 (1993) (distributor who sold equipment

in condition received and unaware of defects alleged, or that anyone injured in the

manner plaintiff claimed, was not liable for negligence because was entitled to rely

on manufacturer not putting defective product in market).

   3.   Plaintiff's Other Asserted Bases for DC Medical's Liability

       Plaintiff alleges further that, while her claims for negligence and negligent

misrepresentation make up the gravamen of her claims, she has also stated valid

causes of action under Georgia law for breach of warranty, fraud and suppression,

and civil conspiracy.  (Remand Br. at 13-14).  Defendants assert that these claims

fail.  (Remand Resp. at 12-15).  The Court agrees.

       Plaintiff's claim for breach of warranty does not allege a viable claim

because DC Medical neither manufactured nor prescribed the ASR device, and

thus privity does not exist between DC Medical and Plaintiff.  See Presto v.

Sandoz Pharm. Corp., 487 S.E.2d 70, 75 (Ga. Ct. App. 1997) (granting summary

judgment on breach of warranty theory in favor of company that dispensed drug to

patient where company neither manufactured nor prescribed it, and thus parties were not in privity).  Moreover, the uncontroverted evidence shows that DePuy sold the ASR device implanted into Plaintiff to the hospital, not that DC Medical sold the ASR device to Plaintiff.  (Castenfelt Decl. ¶ 8).

Plaintiff's claim for fraud and suppression must fail because, as already discussed, Plaintiff has not presented evidence to support her allegation that DC Medical had knowledge of a defect prior to distributing the ASR device implanted into Plaintiff.  See McCrimmon v. Tandy Corp., 414 S.E.2d 15, 17 (Ga. Ct. App. 1991) (to assert a claim for fraud and suppression, plaintiff must produce evidence of a knowing misrepresentation).  Finally, Plaintiff's claim for civil conspiracy must fail because her underlying tort claims fail.  See Mustaqeem-Graydon v. SunTrust Bank, 573 S.E.2d 455 (Ga. Ct. App. 2002) (plaintiff precluded from maintaining action for civil conspiracy where underlying fraud claim is not cognizable).

## III.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not alleged proper claims of liability against the non-diverse defendant DC Medical.  Because proper claims thus have not been asserted against DC Medical, the Court concludes

18

that DC Medical's residence may be ignored and thus this Court has federal jurisdiction based on diversity of the parties' citizenship under 28 U.S.C. § 1332(a).  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion to Remand [6] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Proceedings Pending Transfer to MDL No. 2197 [5] is **GRANTED IN PART** and **DENIED IN PART**.  It is **DENIED** to the extent it requests this Court not to consider Plaintiff's Motion to Remand prior to the MDL Transfer.  It is **GRANTED** in that this Court stays future proceedings of this case in this Court pending transfer to MDL No. 2197.

**SO ORDERED** this 12th day of May, 2011.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE